WILLIAM J. SMITH, PLAINTIFF-APPELLANT, v. TOWNSHIP OF HAZLET, A MUNICIPAL CORPORATION, DEFENDANT-RESPONDENT.

Argued January 9, 1973—Decided September 7, 1973.

Mr. *Philip J. Blanda, Jr.,* argued the cause for appellant (*Messrs. Blanda and Blanda,* attorneys; *Mr. Philip J. Blanda, Jr.,* of counsel).

Mr. *Howard A. Roberts* argued the cause for respondent (*Messrs. Roberts, Madden and Holobinko,* attorneys); *Mr. John E. Holobinko,* on the brief).

The opinion of the Court was delivered by

MOUNTAIN, J. Plaintiff is the Chief of Police of Hazlet Township. By this action in lieu of prerogative writ he challenges the validity of certain resolutions adopted by the governing body of that municipality. The resolutions provide that police sergeants are to be assigned such duty as the township committee may direct and that in the absence of such direction they are to be assigned to such duty as the Chief of Police may designate. The resolutions further specifically state that Sergeant Johnson be placed in charge of the Juvenile Squad and that Sergeant McCabe be continued as Safety Officer and on desk duty as heretofore. All organizational units are to report to the Police Captain who in turn is to report to the Chief of Police. The resolutions were adopted to implement a plan for restructuring the police department that the township committee had been considering for some time. Plaintiff maintains that the action is invalid as trespassing upon prerogatives inherent in his office of Chief of Police.

The trial court granted defendant's motion for summary judgment and the Appellate Division affirmed in an unreported opinion. We granted certification. 62 *N. J.* 81 (1972).

The resolution of the issue before us requires some definition of the power of a chief of police of a township as compared with those retained by and reposing in the governing body. It is initially important to consider the relevant statutes. The police department of the Township of Hazlet was created in 1965 pursuant to *N. J. S. A.* 40: 149–1, which read, in pertinent part,

The township committee may by ordinance establish a police department and provide for the regulation, control and management of a police force, and may, by resolution, appoint such members and officers of such police force as they may deem necessary.

This statute applied solely to townships. In effect at the same time as this statute, there was also a more comprehen-

sive act, applicable to all municipalities including townships, which read as follows:

> The governing body of every municipality may make, amend, repeal and enforce ordinances to establish, maintain, regulate and control a police department and force, and subject to the provisions of article 3 of this chapter (§ 40:47-21 et seq.), a paid fire department and force therein; to prescribe and establish rules and regulations for the government and discipline thereof; the appointment, terms and removal of the officers and members thereof, and to prescribe their duties and fix their compensation. [*N. J. S. A.* 40:47-1]

Both these enactments were repealed in 1971 and replaced by the following:

> The governing body of any municipality, by ordinance, may create and establish a police department and force and provide for the maintenance, regulation and control thereof, and except as otherwise provided by law, appoint such members, officers and personnel as shall be deemed necessary, determine their terms of office, fix their compensation and prescribe their powers, functions and duties and adopt and promulgate rules and regulations for the government of the department and force and for the discipline of its members. [*N. J. S. A.* 40A:14-118]

The act last quoted, which is the law today, is not significantly different for our purposes from the earlier legislation it replaced. Of particular importance to a consideration of the narrow issue here presented is the fact that the office of chief of police is nowhere mentioned in any of these statutes. The power to establish, maintain, regulate and control the police department, to appoint personnel, to prescribe their respective powers, functions and duties and to fix rules and regulations for the government of the police department and the police force is very explicitly and broadly given to the municipal governing body. The chief of police derives no power or authority directly from the statute; it cannot be said that his is a statutory office. Rather his powers are derivative in the sense that they are to be found in the ordinances, resolutions, rules and regulations adopted and promulgated by the governing body in the exercise of its

broad statutory responsibility. Presumably the day to day administration of the department rests with the chief of police and the delegation to him of administrative powers may well be in the public interest as enhancing departmental efficiency. But we deal here with power and not with administrative policy. The legislative scheme is clear.

▮ Plaintiff draws our attention to *L.* 1899, *c.* 135, § 38 (*N. J. S. A.* 40:107–1) which reads:

The chief of police and the chief of the fire department shall each hold office for the term of two years, and they shall respectively be the executive head of the police and fire department, and shall be responsible for its efficiency.

Whatever authority or power may be thought to derive from this source, (See *City Council of Garfield v. Perrapato,* 117 *N. J. Super.* 184, 192–193 (App. Div. 1971)), is of no avail to this plaintiff. The act by its terms applies only to cities having a population of more than 12,000. It has no applicability to a township. A statute respecting police departments in *cities* cannot be extended to affect police departments in townships. *Bohan v. Weehawken,* 65 *N. J. L.* 490, 492 (Sup. Ct. 1900). In fact reference to this legislation suggests an argument opposed to plaintiff's position. The same Legislature that enacted *L.* 1899, *c.* 135, § 38 also, in the same year, enacted a comprehensive statute dealing with townships, *L.* 1899, *c.* 169, in which appeared the prototype of *N. J. S. A.* 40:149–1, quoted above. This latter enactment did not refer in any way to the office of chief of police, much less describe the holder of the office as executive head of the police department. Where two comprehensive statutes are enacted by the same legislative body in the same year, one dealing with a certain class of cities and the other dealing with townships, and where the former designates the office of chief of police and accords the holder of the office some measure of statutory authority, while on the same subject the latter is silent, the inference is permissible that the distinction is a purposeful one.

Our cases have insisted upon strict compliance with the statutory grant of power where the issue has concerned the regulation or control of a police department or police personnel. In *Harvey v. Poole,* 17 *N. J. Misc.* 165 (Ct. of Com. Pl. 1939) the defendant, a member of the police force in Ocean Township, was found to have violated certain regulations that had been promulgated by the chief of police with the approval of a member of the township committee who had been designated chairman of the police department. The rules were held to be invalid since the relevant statute, *N. J. S. A.* 40:149–1, required that all rules and regulations be adopted by the township committee as a whole. Accordingly the charges against the defendant were dismissed. In *Keegan v. Bayonne,* 81 *N. J. L.* 120 (Sup. Ct. 1911), it appeared that the charter of the City of Bayonne provided that the council might, by ordinance, establish and regulate a police department and define and control the duties of the members of the force. An ordinance was adopted permitting the council to appoint sergeants of police who should perform such duties as might from time to time be prescribed by the mayor and approved by the council. One ground upon which the ordinance was held invalid was that it took from the council the exclusive power to prescribe, by ordinance, the duties of the members of the police force, improperly placing it, partially at least, in the person of the mayor.

Although not raising the issue here presented, a number of cases in this State reveal that transfers of police officers from one post of duty to another are commonly undertaken by action of the municipal governing body, rather than by the chief of police. In each of the following decisions this was so. *McManus v. Newark,* 49 *N. J. L.* 175 (Sup. Ct. 1886); *Douglass v. Jersey City,* 53 *N. J. L.* 118 (Sup. Ct. 1890); *Leary v. Orange,* 59 *N. J. L.* 350 (Sup. Ct. 1896); *Leonard v. Fagen,* 76 *N. J. L.* 431 (Sup. Ct. 1908); *McDevitt v. Jersey City,* 77 *N. J. L.* 375 (Sup. Ct. 1909), aff'd 79 *N. J. L.* 600 (E. & A. 1910); *Hansen v. Jersey City,* 77 *N. J. L.* 394 (Sup. Ct. 1909); *Gutheil v. Nelson,* 86 *N. J. L.*

1 (Sup. Ct. 1914), aff'd 87 *N. J. L.* 691 (E. & A. 1915). We have found no case, nor has plaintiff directed our attention to any, where such a transfer has been the act of the police chief, except where his action had the approval of the governing body. In *McManus* the court said:

The regulation of the force by assignment of its members to particular duties, according to the requirements of the service and the special fitness of the individual members for these duties, must certainly be left to the discretion of the board, [of police commissioners] if they are to have any control or any liberty to act for the promotion of the efficiency of their department. [49 *N. J. L.* at 176]

In *Gutheil* the court echoed the same thought:

The line of duty to be assigned to a particular appointee is a matter to be determined from time to time by the board, in the public interest; subject, of course, to such statutory limitations as may exist. The fact that a particular captain has once been assigned to the performance of a particular line of duty, for instance, to the command of a particular precinct, vests in him no right to continue in the performance of that specific duty contrary to the will of the board. He holds the assignment subject to be transferred from one line of duty to another, required to be performed by an officer of his rank, whenever the board, in its good judgment, shall determine it to be for the public interest. The relator, Gutheil, having been appointed captain, and assigned to duty as commander of the first precinct, was entitled to hold that assignment only so long as the public interests, in the opinion of the board, were best subserved thereby. And this is equally true with relation to the assignment of Nelson to duty as head of the detective service. The removal, therefore, by the board of the relator from his command, and its assignment of the respondent to that command, was a valid exercise of the power conferred upon the board by the legislature. [86 *N. J. L.* at 4]

Plaintiff seeks to come within the favor of the rule of such cases as *Edelstein v. Asbury Park,* 12 *N. J. Super.* 509 (App. Div. 1951) ; *McGonnell v. Board of Commissioners of Orange,* 98 *N. J. L.* 642 (Sup. Ct. 1923) ; *Harrington v. Carteret,* 1 *N. J. Misc.* 167 (Sup. Ct. 1923) and *Vandervalk v. Board of Commissioners of Hawthorne,* 8 *N. J. Misc.* 741 (Sup. Ct. 1930). These decisions hold that a chief of police

may not be stripped of all his powers without just cause and without a hearing. Since we have determined that the plaintiff did not in fact possess the powers to which he lays claim, these cases are clearly inapplicable. A power which he did not possess cannot be taken from him.

■ Finally it is claimed that the action of the governing body in some way offends the constitutional doctrine of the separation of powers. As the Appellate Division correctly pointed out in *City Council of Garfield v. Perrapato, supra,* 117 *N. J. Super.* at 187–188, this doctrine, applicable to our Federal and State governments, generally has no applicability to municipalities. Certainly it has none here.

■ At the same time that defendant moved for summary judgment before the trial court the plaintiff moved for leave to amend his complaint. The motion was denied. This ruling by the trial court is assigned as error. We have examined the moving papers presented to the court upon plaintiff's motion and have concluded that even had the additional allegations sought to be included in the proposed amended complaint been before the court, they would not have formed an adequate basis upon which to deny defendant's motion for summary judgment. The allegations charging conspiracy to deprive plaintiff of his office reveal only that certain members of the police force and others were critical of plaintiff's performance. Even if proven they afford no ground upon which judicial relief could be granted in the context of this case.

The judgment of the Appellate Division is affirmed.

*For affirmance* — Chief Justice GARVEN, and Justices JACOBS, HALL and MOUNTAIN, and Judges SULLIVAN and LEWIS—6.

*For reversal* — None.