NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0019-12T2

IN THE MATTER OF THE GRANT
OF A CHARTER TO THE MERIT
PREPARATORY CHARTER SCHOOL
OF NEWARK AND IN THE MATTER
OF THE GRANT OF A CHARTER TO
THE NEWARK PREPARATORY
CHARTER SCHOOL.

```
┌─────────────────────────────┐
│   APPROVED FOR PUBLICATION   │
│                              │
│        April 9, 2014         │
│                              │
│      APPELLATE DIVISION      │
└─────────────────────────────┘
```

_____

Argued January 27, 2014 — Decided April 9, 2014

Before Judges Yannotti, Ashrafi and Leone.

On appeal from the Commissioner of the State
of New Jersey, Department of Education.

Richard E. Shapiro argued the cause for
appellant New Jersey Education Association.

Geoffrey N. Stark, Deputy Attorney General,
argued the cause for respondent New Jersey
Commissioner of Education (John H. Hoffman,
Acting Attorney General, attorney; Melissa
H. Raksa, Assistant Attorney General, of
counsel; Mr. Stark, on the brief).

Devora W. Allon, (Kirkland & Ellis LLP)
of the New York bar, admitted pro hac vice,
argued the cause for  respondent Newark
Preparatory Charter School (Lite DePalma
Greenberg, LLC, Lay P. Lefkowitz (Kirkland &
Ellis LLP) of the New York bar, admitted pro
hac vice, and Ms. Allon, attorneys; Michael
E. Patunas, Jeffrey A. Shooman, Samara L.
Penn, Ms. Allon, and Mr. Lefkowitz, on the
brief).

Robert P. Avolio argued the cause for respondent Merit Preparatory Charter School of Newark (Avolio & Hanlon, P.C., attorneys; Mr. Avolio, of counsel and on the brief; Amie C. Kalac, on the brief).

Gibbons P.C., attorneys for amicus curiae New Jersey PublicSchoolOptions.org (Lawrence S. Lustberg and Jillian T. Stein, on the brief).

The opinion of the court was delivered by

ASHRAFI, J.A.D.

Appellant the New Jersey Education Association ("NJEA") appeals from the grant of charters by the New Jersey Commissioner of Education to the Merit Preparatory Charter School of Newark and the Newark Preparatory Charter School. NJEA expresses concern for the diversion of public funds and resources from traditional public schools, and it contends the Legislature authorized charters only for traditional "brick-and-mortar" schools, not ones that use online teaching methodology. Merit Prep and Newark Prep, however, are not online internet schools. They use a "blended" teaching methodology that combines in-person, face-to-face teaching and online instruction by means of internet materials. They teach their students in school buildings during a traditional school day and under the supervision of a teaching staff. We affirm the Commissioner's decisions.

The Charter School Program Act of 1995 authorizes the establishment of charter schools in New Jersey. N.J.S.A. 18A:36A-1 to -18. "A charter school [is] a public school operated under a charter granted by the commissioner, which is operated independently of a local board of education and is managed by a board of trustees." N.J.S.A. 18A:36A-3(a). Charter schools are funded by taxes collected from the public that would otherwise fund traditional public education. See N.J.S.A. 18A:36A-12.

The application requirements and review process for schools seeking charters are governed by various provisions of the Charter School Act and implementing regulations. See, e.g., N.J.S.A. 18A:36A-4, -4.1, -5; N.J.A.C. 6A:11-2.1. The statutes and regulations do not contain specific directives on how the Commissioner must evaluate charter applications, but the Act includes findings and declarations reciting the Legislature's general goals and objectives in authorizing charter schools. N.J.S.A. 18A:36A-2. The Legislature intended to provide "a mechanism for the implementation of a variety of educational approaches which may not be available in the traditional public school classroom," and to "encourage the use of different and innovative learning methods." Ibid. The Act empowers the

Commissioner with "final authority to grant or reject a charter application."  N.J.S.A. 18A:36A-4(c).

Merit Prep and Newark Prep applied for charters to establish schools that use a blended model of teaching and learning.  The applications of both schools proposed teaching the New Jersey Core Curriculum Content Standards ("NJCCCS" or "core curriculum") partly by online instruction.  Both schools would require student and teacher attendance in a physical building, and the online teaching would be facilitated by in-person instructors.

Merit Prep described its methodology as utilizing computers in the classroom as "a virtual textbook/workbook . . . used to determine student progress in real time."  "Each of the nine [core curriculum] content standards [would] be taught by a teacher and heavily reinforced with online exercises and assessments."  Approximately half the eight-hour school day would be conducted in face-to-face instruction with certified teachers.

Newark Prep's application stated that "[e]very student will receive a fully differentiated educational experience supported by self-paced learning."  It described use of an innovative blended learning methodology that would combine online, project-based, and experiential learning.  "Master Teachers" would

monitor specific core curriculum subject areas and track each student's self-paced progress and problems in the use of the online programs. Teachers and tutors would "pull out students for extra attention as individuals and/or in groups" and conduct "face time sessions." Newark Prep also planned for teacher-led instruction in small groups of students, fewer than fifteen at a time.

Thus, Merit Prep and Newark Prep did not propose "virtual" schools, where all teaching content would be online and attendance in a school building would not be required.

NJEA and other groups objected to the granting of charters to the two schools on the ground that their online teaching method is not authorized by the Charter School Act. The Commissioner rejected their objections and granted the charters. NJEA asks us to reverse the Commissioner's decisions. We previously denied NJEA's application for a stay of the charters, and the two schools have been operating since the 2012-13 school year.

The Commissioner argues that NJEA does not have standing to challenge his grant of the charters. He contends N.J.S.A. 18A:36A-4(d) limits the right to appeal his decision to grant or deny a charter only to the applicant and the local school board. See also N.J.A.C. 6A:11-2.5 ("An eligible applicant for a

charter school, a charter school, or a district board of education or State district superintendent of the district of residence of a charter school may file an appeal according to N.J.S.A. 18A:6-9.1."). The Commissioner contends the Act was not intended to create a private right of action by anyone who opposes the granting of a charter.

"Standing is a threshold requirement for justiciability" of a cause of action seeking a court's intervention and judgment. See Watkins v. Resorts Int'l Hotel & Casino, 124 N.J. 398, 421 (1991). In New Jersey, courts take "a liberal approach to standing to seek review of administrative actions." In re Camden Cnty., 170 N.J. 439, 448 (2002). A party has standing to challenge an administrative agency's decision when the party has "a sufficient stake in the outcome of the litigation, a real adverseness with respect to the subject matter, and a substantial likelihood that the party will suffer harm in the event of an unfavorable decision." Id. at 449; accord In re Issuance of Access Conforming Lot Permit, 417 N.J. Super. 115, 126 (App. Div. 2010). But when an issue involves a "great public interest, any slight additional private interest will be sufficient to afford standing." Salorio v. Glaser, 82 N.J. 482, 491 (internal quotation marks omitted), cert. denied, 449 U.S. 804, 101 S. Ct. 49, 66 L. Ed. 2d 7 (1980); see also People for

Open Gov't v. Roberts, 397 N.J. Super. 502, 510 (App. Div. 2008) ("[I]t takes but slight private interest, added to and harmonizing with the public interest to support standing to sue." (quoting Hudson Bergen Cnty. Retail Liquor Stores Ass'n v. Bd. of Comm'rs of Hoboken, 135 N.J.L. 502, 510 (E. & A. 1947))).

Here, NJEA is a collective bargaining organization of teachers and other educators. It claims its members, as well as their students, will be deprived of public funding for traditional public schools if online teaching methodology is funded by public tax dollars. NJEA alleges its members have an adverse private interest because approval of such charter schools will affect their employment. In another context, we have held that "an organization whose members are aggrieved and have interests that are sufficiently adverse has standing to challenge agency action on behalf of its members." N.J. Dental Ass'n v. Met. Life Ins. Co., 424 N.J. Super. 160, 167 (App. Div.), certif. denied, 210 N.J. 261 (2012).

We are not convinced that the membership of NJEA will be adversely affected by the Commissioner's granting of charters to schools using a blended teaching methodology. Cf. Indep. Energy Producers of N.J. v. N.J. Dep't of Envtl. Prot. & Energy, 275 N.J. Super. 46, 56 (App. Div.) (interest of the organization's members may be "too ethereal to justify judicial recognition and

7

acknowledgement"), certif. denied, 139 N.J. 187 (1994); In re Ass'n of Trial Lawyers of Am., 228 N.J. Super. 180, 181 (App. Div.) (trial lawyers' association lacked standing to challenge products liability statute on constitutional grounds), certif. denied, 113 N.J. 660 (1988).  Nevertheless, this appeal raises a novel legal issue of whether the Commissioner may approve a charter school that employs blended teaching methodology using internet materials.  The issue is of "substantial public interest."  Falcone v. De Furia, 103 N.J. 219, 226 (1986).  We conclude NJEA's membership has demonstrated a slight private interest that, together with the substantial public interest, affords it standing to pursue this appeal.

"[C]ourts have but a limited role to play in reviewing the action of other branches of government."  In re Petition for Rulemaking, 117 N.J. 311, 325 (1989).  We may reverse the Commissioner's decision to grant or deny a charter only if it is arbitrary, capricious, or unreasonable.  In re Proposed Quest Acad. Charter Sch. of Montclair Founders Grp., 216 N.J. 370, 385-87 (2013).  This deferential standard of judicial review is more fully explained as follows:

> [a]lthough sometimes phrased in terms of a
> search for arbitrary or unreasonable agency
> action, the judicial role [in reviewing an
> agency action] is generally restricted to
> three inquiries: (1) whether the agency's
> action violates express or implied

> legislative policies, that is, did the
> agency follow the law; (2) whether the
> record contains substantial evidence to
> support the findings on which the agency
> based its action; and (3) whether in
> applying the legislative policies to the
> facts, the agency clearly erred in reaching
> a conclusion that could not reasonably have
> been made on a showing of the relevant
> factors.
>
> [Id. at 385-86 (alteration in original)
> (quoting Mazza v. Bd. of Trs., 143 N.J. 22,
> 25 (1995)).]

We are not bound by an agency's interpretation of a statute or its determination of a legal issue, In re Taylor, 158 N.J. 644, 658 (1999), but we generally "give substantial deference to the interpretation an agency gives to a statute that the agency is charged with enforcing." Norfolk S. Ry. Co. v. Intermodal Props., LLC, 215 N.J. 142, 165 (2013) (quoting R & R Mktg., LLC v. Brown-Forman Corp., 158 N.J. 170, 175 (1999)).

Here, NJEA argues that the granting of charters to Merit Prep and Newark Prep was arbitrary, capricious, and unreasonable because the Charter School Act does not give the Commissioner express or implied authority to approve online or blended teaching methodology. We disagree.

While nothing in the Act allows or disallows any particular teaching methodology, the legislative goal was to permit "a variety of educational approaches which may not be available in the traditional public classroom." N.J.S.A. 18A:36A-2. Also,

charter schools are to provide "choices . . . when selecting [a] learning environment," and the Act was intended to "encourage the use of different and innovative learning methods."  Ibid.  "In determining whether a particular administrative act enjoys statutory authorization, the reviewing court may look beyond the specific terms of the enabling act to the statutory policy sought to be achieved . . . ."  N.J. Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 562 (1978).  By explicitly stating its goals and objectives, the Legislature established a policy by which it gave the Commissioner broad authority to grant charters to schools using a variety of educational methodology.

We find no merit in NJEA's argument that the absence of an express reference to online teaching in the Act and its legislative history suggests the Legislature would not permit that form of teaching.  See In re Application of Virgo's, Inc., 355 N.J. Super. 590, 595 (App. Div. 2002) (Although no specific statutory provision either empowered or precluded the action taken, "administrative agencies must be given broad authority to carry out their mandates.").

The Act does not make reference to any specific teaching method.  If online teaching methods are prohibited because they are not expressly mentioned, then it follows that all novel

teaching methods not prescribed by the Act are prohibited. Adopting the NJEA's position would defeat the Legislature's stated purpose. N.J.S.A. 18A:36A-2; see Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 586-88 (2013) (courts must interpret statutes consistently with the Legislature's purpose); In re Sussex Cnty. Mun. Utils. Auth., 198 N.J. Super. 214, 217 (App. Div.) ("[L]egislative language must not, if reasonably avoidable, be found to be inoperative, superfluous or meaningless."), certif. denied, 101 N.J. 267 (1985).

The Legislature may not have contemplated the use of internet-based teaching when the Act was passed in 1995, but the Act cannot be read narrowly as only allowing methods that were in existence at its inception. Certainly, the Legislature did not intend to exclude advances in technology from charter school classrooms. It intended just the opposite.

Similarly, we are not persuaded by NJEA's argument that the Act does not expressly authorize the use of online methods to teach the core curriculum. While the regulations require evidence of a "[c]urriculum that is compliant with" the NJCCCS, N.J.A.C. 6A:11-2.2(a)(1)(iii), neither the Act nor the regulations specify any particular teaching method.

Nor do we read the Act as limiting the Commissioner's authority on the ground that the Legislature would have fixed a different funding formula for charter schools that use teaching methods unlike those of traditional "brick-and-mortar" schools. See N.J.S.A. 18A:36A-12. Merit Prep and Newark Prep are schools with a physical location where attendance is mandatory during the normal school day. The online aspect of teaching occurs in the school building under the supervision of teachers and staff. The primary distinction between them and traditional schools lies in the novel teaching methodology. The Act does not require the Legislature's re-evaluation of funding formulas simply because the Commissioner authorized a charter school with novel teaching methodology.

The Commissioner decided to grant charters to Merit Prep and Newark Prep after reviewing the comprehensive applications they submitted. The applications explained how online teaching methods are designed to create a personalized, differentiated educational experience that incorporates self-paced learning with teacher interaction, a method that is not typically available in traditional public schools. The proposed teaching methods promote the Act's policy of enhancing innovative teaching methodology and student and parental choice. The Commissioner's decision was not contrary to his legislative

A-0019-12T2

authority and is supported by substantial evidence in the record.  It is not arbitrary, capricious, or unreasonable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13                                                        A-0019-12T2